Brian C. Unitt (SBN 109453)
brianunitt@holsteinlaw.com
HOLSTEIN, TAYLOR and UNITT
A Professional Corporation
4300 Latham Street, Suite 103
Riverside, California 92501
(951) 682-7030
(951) 684-8061 - fax

Jonathan Velie (OBA 15106)
information@velielaw.com
VELIE LAW FIRM
410 E. Main Street, Suite 310
Norman, OK 73069
(405) 310-4333
(405) 310-4334 - fax

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

MARGARET MIRANDA, CLARA MIRANDA, CINDY GRIEGO, ROSANNA MIRANDA, HELEN HERRERA, ROSE ANN HERRERA, MONICA HERRERA, MICKI HERRERA, INEZ ALVAREZ, and BELINDA MIRANDA,

Plaintiffs,

vs.

SALLY JEWELL, Secretary of the Interior, and UNITED STATES DEPARTMENT OF THE INTERIOR,

Defendants.

ED CV14-00312VAP (SPx)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Date: January 12, 2015
Time: 2:00 p.m.

///

///

///

# TABLE OF CONTENTS

I

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II

SUMMARY OF UNDISPUTED FACTS . . . . . . . . . . . . . . . . . . . . . . . . . 2

III

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

A. Standard For Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

B. The Undisputed Facts Establish That The Bureau Of Indian Affairs Acted Arbitrarily And Capriciously In Making Their Decision . . . 5

C. The Federal Defendant's actions were Arbitrary and Capricious . . . . . 9

IV

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# TABLE OF AUTHORITIES

Federal Statutes

5 U.S.C. §706 . . . . . . . . . . 5

Federal Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) . . . . . . . . . . 4, 5

*Cahto Tribe of Laytonville Rancheria v. Dutschke*, 715 F.3d 1225 (2013) . . . . . 7

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) . . . . . . . . . . 4

*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971) . . . . . . . . . . 5

*Green v. Biddle*, 21 U.S. 1, 89-90 (1823) . . . . . . . . . . 6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) . . . . . . . . . . 4

*Oneida Indian Nation of New York v. Clark*, 593 F. Supp. 257 . . . . . . . . . . 5, 6, 9

*Oregon Dept. of Fish and Wildlife v. Klamath Indian Tribe*, 473 U.S. 753, 774 (1985) . . . . . . . . . . 9

*South Carolina v Catawba Indian Tribe, Inc.,* 476 U.S. 498, 506-07 (1986) . . . 9

*Walker v. Darby*, 911 F.2d 1577 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Western World Ins. Co. v. Stack Oil, Inc.*, 922 F. 2d 118, 131, (2d Cir. 1990) . . 5

Federal Rules

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

MEMORANDUM OF POINTS AND AUTHORITIES

I

INTRODUCTION

Plaintiffs are Native Americans entitled to membership in the Santa Ynez Band of Mission Indians, a.k.a. Santa Ynez Band of Chumash Indians ("SYB") under the plain language of the governing documents of the Band. Their ancestor, Rose Pace is listed on the 1940 Census as 4/4 Santa Ynez Indian. The SYB Articles of Organization lists only the 1940 Census as the benchmark for membership in the Band. SYB Ordinance No. 2 states "Indian Blood of the Band," means the total percentage of Indian blood derived from an ancestor or ancestors who were listed on the Santa Ynez 1940 Census Roll. The SYB governing documents also delegate the power to review membership decisions to the Federal Defendants in this action, specifically to the Bureau of Indian Affairs (BIA).

Following a very protracted enrollment process spanning more than a decade, the BIA upheld the SYB's initial decision, denying Plaintiffs' membership in the Band, and refusing to increase Plaintiffs' incorrectly calculated blood quantum. The BIA's decision improperly relied on evidence extrinsic to the 1940 Census.

Plaintiffs therefore seek Summary Judgment against the Federal Defendants, on the ground that its decision is arbitrary and capricious under the Administrative Procedure Act (APA). The decision must be set aside as it is in violation of the plain language of the Tribal Law it was required to apply. The judgment should direct the BIA to instruct the SYB Enrollment Committee to correct the Plaintiffs' blood quantum, and place the Plaintiffs' names on the SYB membership roll.

/ / /

II

SUMMARY OF UNDISPUTED FACTS

The undisputed facts of this case are as follows:

(1) SYB membership is defined by the Articles of Organization of the Santa Ynez Indian Band, Santa Ynez Reservation, California which states in pertinent part:

"Membership in the Band shall consist of:

A. Those living persons whose names appear on the January 1, 1940 Census Roll of the Santa Ynez Band of Mission Indians, except that where "NE" appears in column I opposite the names of certain persons, such persons shall not be eligible for membership.

B. Living descendants of those person described in Section 1 A regardless of whether those persons listed on the census roll are living or deceased, provided that such descendants have one-fourth (1/4) or more degree of Indian blood of the Band."

(SUF[1] para. 1,2; AR[2] at 201.);

(2) SYB Ordinance No. 2 states, "Indian Blood of the Band" for the purposes of Article III, Section 1. B. of the Articles of Organization, means the total percentage of Indian blood derived from an ancestor or ancestors who were listed on the Santa Ynez 1940 Census Roll (SUF para. 2; AR at 216.);

(3) SYB law grants the Bureau of Indian Affairs ("BIA" or "Bureau") the decision making authority on final membership determinations pursuant to SYB Ordinance No. 2 which states, in pertinent part:

A person disapproved for enrollment shall be advised in writing of

---

[1]Refers to Plaintiffs' Separate Statement of Undisputed Facts.

[2] "AR" refers to the Administrative Record lodged by Defendants on July 22, 2014. (Docket No. 18)

> the reasons for the action of the Enrollment Committee and that is decision may be appealed to the Director within thirty (30) days following receipt of a rejection notice. If the Director sustains the decision of the Enrollment Committee, he shall notify the applicant of his decision and that his decision may be appealed to the Commissioner within thirty (30) days following receipt of the Director's decision. If the Director cannot sustain the decision of the Enrollment Committee, he shall instruct the Enrollment Committee to place the applicants name on the roll.

(SUF para. 4; AR at 218-19.);

4) Rosa Pena Valencia Pace (No. 84), ancestor of the Plaintiffs, is listed on the 1940 Census Roll as 4/4 Santa Ynez Indian by blood degree (SUF para. 5; AR at 156);

(5) On November 4, 2002 the SYB Enrollment Committee wrote a letter to Plaintiff Rosanna Miranda as well as a separate letter to Plaintiff Margaret Miranda informing both of them that their applications to increase their blood quantum had been denied and that they had 30 days to appeal the decision. The basis of the decision was that the Plaintiffs' relevant ancestor Rosa Pace was ½ Santa Ynez Indian by blood (SUF para 6; AR at 45-48.);

(6) On December 27, 2002, attorney for Plaintiffs appealed a decision of the Enrollment Committee to the Defendants. The basis of the Appeal was the unlawful denial of enrollment or diminished blood quantum to the Plaintiffs (SUF para. 7; AR at 38-41.);

(7) On December 14, 2012, Plaintiffs filed sued then Secretary of the Interior Kenneth Salazar ED-CV 12-02216, later amended to name Secretary Jewell in place of Secretary Salazar (SUF para. 8; Docket No. 11, para. 34; Docket No. 1 para 34);

(8) On July 3, 2013, the case was dismissed without prejudice on the basis that Plaintiffs had failed to exhaust administrative remedies as they did not comply with 25 C.F.R. 2.8 (a) (SUF para. 10; Docket No. 11 para. 35; Docket No. 1 para 35);

(9) On September 5, 2013 Plaintiffs, pursuant to 25 C.F.R. 2.8 (a), sent a letter to the Bureau requesting Agency action after inaction of appeals of Membership or Increasing of Blood quantum applications (SUF para 10; AR at 18-22.);

(10) On November 21, 2013, pursuant to Tribal Law, Federal Defendant's affirmed the Enrollment Committee's decision, because they determined that although Rose Pace appeared on the 1940 Census Roll as "4/4/," there is "no indication that degree of Indian blood listed on the Santa Ynez 1940 Census roll must be used." (SUF para. 11; AR at 1-6.).

III

ARGUMENT

A. Standard For Summary Judgment

The purpose of a summary judgment is to grant a decision to a movant when there are no disputes as to any material facts, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The initial burden is on the moving party to provide a basis for summary judgment. The movant must identify the evidence it believes presents the "absence of a genuine issue of material fact,." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Judgment will be entered against the nonmoving party where the dispute can only be decided one way as a matter of law. *Anderson* at 249-50. If the nonmoving party contends a genuine dispute in material fact exists, the party must rely on present evidence of specific facts in support of its claim. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 586-87 (1986).

The nonmoving party must present concrete evidence of a disputed material fact, not merely a vague assertion created in order to avoid a summary judgement decision. *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F. 2d 118, 131 (2d Cir. 1990). "If the evidence is merely colorable . . . or is not significantly probative . . summary judgment may be granted.: *Anderson*, at 249-50. "A mere scintilla of evidence supporting the opposing party's position will not suffice," the showing must be sufficient so that a trier of fact could reasonably find for that party. *Walker v. Darby*, 911 F.2d 1577. All facts discussed above are agreed upon by the parties.

Here, Plaintiffs, by reference to the ancestor's blood quantum stated on the 1940 Census, meet the standard by SYB membership. The SYB governing documents reference only the 1940 Census as the basis for determining the blood quantum of membership applicants. Summary judgment for Plaintiffs is required where the record demonstrates the Federal Defendants' decision to deny Plaintiffs' membership arbitrarily and capriciously disregarded the plain language of SYB law.

B. The Undisputed Facts Establish That The Bureau Of Indian Affairs Acted Arbitrarily And Capriciously In Making Their Decision

The APA states "a reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law[.]" 5 U.S.C. §706 (s)(a). For a Court to find the agency acted arbitrarily and capriciously, the Court must find that the agency committed a clear error of judgment based on all of the relevant factors. *Oneida Indian Nation of New York v. Clark*, 593 F. Supp. 257, 262-63, citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971). "In the context of the arbitrary and capricious standard, a clear error of judgment

will not be found so long as the agency's decision has a rational basis." *Oneida* at 263.

Defendant must follow the plain meaning of a Tribe's laws when involved in tribal affairs. The plain meaning of the Tribe's Articles is that the 1940 Census is the sole document that should be referred to in membership determinations. The Federal Defendants acted in opposition to the SYB's Articles when they affirmed a decision by the SYB Enrollment Committee that relied on documents and other evidence instead of the 1940 Census. "[W]here the words of a law, treaty, or contract, have a plain and obvious meaning, all construction, in hostility with such meanings, is excluded." *Green v. Biddle*, 21 U.S. 1, 89-90 (1823). The Defendants' determination that they may use documents and other evidence besides the 1940 Census to determine Plaintiffs' blood quantum is directly at odds with the plain and obvious meaning of the Tribe's governing documents. The plain and obvious meaning of the Tribe's Articles of Organization is that the 1940 Census is the sole document to be consulted in making a membership determination. The Federal Defendants' decision was arbitrary and capricious because, in receiving and considering other evidence outside the1940 Census in making its decision, it arrogated to itself power beyond that delegated to it by the SYB.

The Tribe's governing document must be interpreted under its plain and obvious meaning,

When making tribal determinations, the BIA must apply the Tribe's laws under the plain and obvious meaning of the text. This is the only meaning that can be derived from their laws and must be strictly adhered to. Alternate interpretations contrary to the plain meaning are impermissible. See *Green*, 89-90. Here, one can see that the Tribe's Articles of Organization lists only the 1940 Census Roll to determine whether an applicant meets the Tribe's membership

criteria.

The Bureau cannot deviate from the plain language of the law's text.

The Bureau's reading is limited to solely what the words of the text mean. The recent decision in *Cahto Tribe of Laytonville Rancheria v. Dutschke*, 715 F.3d 1225 (2013), confirms the Bureau cannot deviate from the law of the Tribe. In *Cahto*, the Court held that the plain meaning of the Cahto Tribe's Articles of Association granted "a right of appeal only for rejections of enrollment applications, not for disenrollment decisions." Id. at 1229. The Federal Defendant in *Cahto* tried to direct the tribe to place disenrolled individuals on the Tribe's membership roll, however the Court concluded that the Tribe's governing documents did not give them the right to review appeals of disenrollment actions. The Court explained that the Cahto Tribe's Articles of Association explicitly refers to an applicant's enrollment appeals rights, but "[n]owhere in the tribal documents is there a grant of authority to the BIA to review appeals from disenrollment decisions." Id. at 1230 (emphasis added). The Court did not agree with the agency's view that there is no distinction between enrollment and disenrollment applications and thus set aside their decision. Even the slightest distinction, such as the difference between an enrollment and a disenrollment appeal is considered failing to abide by the plain meaning of the Tribe's regulations.

In the present action, SYB Ordinance No. 2 says:

> A Person disapproved for enrollment shall be advised in writing of the reasons for the action fo the Enrollment Committee and that its decision may be appealed to the Director within thirty (30) days following receipt of a rejection notice. If the Director sustains the decision of the Enrollment committee, he shall notify the applicant of his decision and that his decision may be appealed to the

Commissioner within thirty (30) days following receipt of the Director's decision. If the Director cannot sustain the decision of the Enrollment Committee, he shall instruct the Enrollment Committee to place the applicants name on the roll. (AR 218.)

Therefore, the BIA has the duty granted by Tribal law to determine whether the SYB Enrollment committee followed SYB law in making its decision. SYB law states membership is to be limited to "[t]hose living persons whose names appear on the January 1, 1940 Census Roll of the Santa Ynez Band of Mission Indians, except that where "NE" appears in column 1 opposite the names of certain persons, such persons shall not be eligible for membership," or "[l]iving descendants of those persons described in Section 1 A regardless of whether those persons listed on the Census Roll are living or deceased, provided that such descendants have one-fourth (1/4) or more degree of Indian blood of the Band." Article III Membership, Section 1 AR at 201.) In addition to the Tribe's Articles, they created and Ordinance defining membership that says "'Indian Blood of the Band' as used in Article III, Section 1. B., of the Articles of Organization, means tha total percentage of Indian blood derived from an ancestor or ancestors who were listed on the Santa Ynez 1940 Census Roll." Ordinance No 2, Enrollment Ordinance. Section 1. G (AR at 216) Therefore, the Defendants were precluded from relying on any evidence other than the 1940 Census and therefore its decision to affirm the SYB Enrollment Committee's decision should be set aside as arbitrary and capricious.

The plain and obvious meaning of the Tribe's governing documents allow only the 1940 Census Roll when evaluating an applicants membership criteria.

While there are certain instances where the Bureau may be forced to interpret vague language in a statute or Constitution, "[t]he canon of construction regarding the resolution of ambiguities in favor of Indians . . does not permit

reliance on ambiguities that do not exist[.]" *South Carolina v Catawba Indian Tribe, Inc.,* 476 U.S. 498, 506-07 (1986). It is not disputed that if there is disagreement in the interpretations of ambiguous text, that it will be understood to favor the Tribe, but "even though legal ambiguities are resolved to the benefit of the Indians, courts cannot ignore plain language that, viewed in historical context and given a fair appraisal, clearly runs counter to a tribe's later claims." *Oregon Dept. of Fish and Wildlife v. Klamath Indian Tribe*, 473 U.S. 753, 774 (1985). There is no indication here that there is any ambiguity or confusion in the meaning of the SYB's laws. The Bureau had no reason to concoct any meaning necessary to clarify confusing language present in the text because the text clearly states all that is required.

C. The Federal Defendant's actions were Arbitrary and Capricious

Under *Oneida Indian Nation of New York v. Clark,* 593 F. Supp. 257, 262, an act is considered arbitrary and capricious if "the agency did not consider all the relevant factors or committed a clear error of judgment," also "a clear error of judgment will not be found so long as the agency's decision has a rational basis." Id. at 263. The Court must set aside the Defendant's decision to affirm the Enrollment Committee's membership decision because there is no rational basis using evidence outside the sole document listed on the Articles of Organization, the 1940 Census Roll. It is a clear error of judgment, and in violation of the plain language of the Tribe's law to look at other documents to establish the Plaintiffs' blood quantum.

*Ransom v. Babbitt*, 69 F. Supp.2d 141, 143, held that the Defendants' actions were arbitrary and capricious when they refused to review intensely disputed tribal procedures. The Tribe required "fifty-one (51%) of the those present and voting in the referendum" to adopt a new Constitution. Id. After a tallying of the votes, only 50.935093% voted in favor of adopting the

Constitution. While the Constitution did not receive the amount of votes needed to adopt it, the BIA declined to recognize the prior government and declared that the Tribe's new Constitution should be implemented. "Defendants' repeated refusal to recognize the Tribe's earnest efforts to undo its contentious certification of the Constitution . . . is disingenuous at best. Upon review, Defendants' actions reveal themselves to be arbitrary, capricious and contrary to law." Id. at 155.

The BIA decided to read the language of the Tribe's rules so as to make "51%" the equivalent to the "majority." Because of this, the Court found that Defendants acted arbitrarily and capriciously and granted summary judgment to the Plaintiffs. *Ransom* shows that the BIA cannot make their own interpretations of Tribal law when making decisions if that interpretation is different from the plain language of the law. The Court found these interpretations of non-existent ambiguities to be a clear error of judgment by the Bureau.

In the matter at hand, the Federal Defendant denied Plaintiffs appeal because they interpreted the Tribes governing document to say that although membership is based on the names of the members on the 1940's Census Roll "[t]here is no indication that degree of Indian blood listed on the Santa Ynez 1940 Census Roll must be used." (AR at 3.) Similar to *Ransom*, BIA's interpretation here is contrary to the plain and obvious meaning of the text. While the Bureau claims that there is no indication that the blood quantum from the 1940 Census must be used, the plain language of the Articles, as well as the Ordinance does just that. When Ordinance No. 2 defines "Indian Blood of the Band" as "the total percentage of Indian blood derived from and ancestor or ancestors who were listed on the Santa Ynez 1940 Census Roll," it plainly and obviously indicates that the 1940 Census should be the sole document referenced when determining blood quantum (AR at 216.)

## IV

## CONCLUSION

Defendants cannot dispute that the SYB Articles of Organization list the 1940 Census as the sole basis for determining membership, and that the 1940 Census lists Plaintiffs' ancestor as 4/4 Santa Ynez Indian blood. As was the case in *Ransom, supra*, the conclusion here is inescapable that when the BIA interprets Indian law in a manner contrary to the plain and obvious meaning expressed in its language, it is acting arbitrarily and capriciously, and its decision must be set aside under the APA.

For these reasons, Plaintiffs respectfully ask this Court to grant summary judgment, and by that judgment to direct the BIA to instruct the SYB Enrollment Committee to place the Plaintiffs' names on the SYB membership roll.

DATED: August 28, 2014

HOLSTEIN, TAYLOR and UNITT
A Professional Corporation

BRIAN C. UNITT
Attorney for Plaintiffs